```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
In re Collins & Aikman Corporation :
                                   :   05 Civ. 3791 (MBM)
Securities Litigation              :
                                   :   OPINION AND ORDER
                                   :
-----------------------------------X

APPEARANCES:

FRED T. ISQUITH, ESQ.
GREGORY M. NESPOLE, ESQ.
THOMAS H. BURT, ESQ.
PAULETTE S. FOX, ESQ.
(Attorneys for lead plaintiff K.J. Egleston)
Wolf Haldenstein Adler Freeman & Herz LLP
270 Madison Avenue
New York, NY 10016
(212) 545-4600

LORI A. MARTIN, ESQ.
(Attorney for defendant David A. Stockman)
Wilmer Cutler Pickering Hale and Dorr LLP
399 Park Avenue
New York, NY 10022
(212) 230-8800

GANDALFO V. DIBLASI, ESQ.
DAVID E. SWARTS, ESQ.
(Attorneys for defendant J. Michael Stepp)
Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004
(212) 558-4000

HARRIS N. COGAN, ESQ.
(Attorney for defendant Bryce Koth)
Blank Rome LLP
The Chrysler Building
405 Lexington Avenue
New York, NY 10174
(212) 885-5000
```

MICHAEL B. MUKASEY, U.S.D.J.

Plaintiff K.J. Egleston sues Heartland Industrial Partners, L.P., and Heartland Industrial Associates, L.L.C., as well as individual defendants David A. Stockman, J. Michael Stepp, Bryce Koth, and Jerry L. Monsingo (collectively, "the individual defendants"), on behalf of a purported class of purchasers of the publicly-traded securities of Collins & Aikman Corporation for violations of the federal securities laws. Defendants Stockman, Stepp, and Koth move for an order pursuant to 28 U.S.C. § 1404(a) (2000) transferring venue of plaintiff's action to the Eastern District of Michigan.[1]  For the reasons set forth below, defendants' motion is granted.[2]

I.

Collins & Aikman Corporation ("C&A"), a Delaware corporation based in Troy, Michigan (Consolidated Complaint ("Compl.") ¶ 12), designs, engineers, and manufactures automotive interior components and sells them to automobile manufacturers such as General Motors, Ford, and Chrysler. (Compl. ¶ 2; Ex. 4 to Martin Decl. at 4)  On March 17, 2005, C&A announced in a

---

[1] The Heartland entities join in defendants' transfer motion; Monsingo has yet to appear in this action. (See Def. Mem. 1 n.1)

[2] Because I find that transfer is warranted, I do not reach defendants' pending motions to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6).

1

press release that it was delaying its Annual Report on Form 10-K and restating its results for the first three quarters of 2004 and possibly 2003 because it had uncovered accounting irregularities relating to the booking of supplier rebates. (Compl. ¶¶ 3, 40) The news drove C&A's stock price down 24 percent on heavy trading. (Id. ¶¶ 130, 133) Over the next two months, C&A revealed that it had retained independent counsel to investigate the rebate issue (id. ¶ 134), that the adjustments disclosed in March likely would be larger than predicted (id. ¶ 137), and that Stockman, the company's CEO, had resigned (id. ¶ 135). The bad news culminated on May 17, 2005, when the company announced that it had sought Chapter 11 protection under the federal bankruptcy code. (Id. ¶ 138)

On May 23, 2005, plaintiff filed a federal securities class action complaint on behalf of all purchasers of C&A's publicly traded securities between May 15, 2003, and March 17, 2005. The complaint was one of many filed in the wake of C&A's negative disclosures and named Stockman, Stepp, Koth, and Monsingo as defendants. On January 13, 2006, plaintiff filed the current, 113-page consolidated complaint extending the close of the class period to May 17, 2005 (Compl. ¶ 1); adding allegations made by confidential informants in a related lawsuit by a major holder of C&A's debt securities in Michigan (id. ¶ 1); and naming also as defendants Heartland Industrial Associates, L.L.C., and

Heartland Industrial Partners, L.P. (collectively, "Heartland"), Connecticut-based entities that owned a controlling stake in C&A and held six of eleven seats on C&A's board of directors, including the chairmanship (id. ¶¶ 26-27).[3]

Plaintiff's complaint catalogues numerous allegedly false and misleading statements contained in C&A's class period public disclosures regarding the company's financial results, accounting, and business prospects. These disclosures, which need not be reviewed in any detail here, are generally claimed to be fraudulent because they: (1) improperly accounted for and disclosed supplier rebates; (2) overstated earnings and operating income; (3) inflated revenue and receivables; (4) failed to disclose that C&A was locked into unprofitable contracts with manufacturers; (5) failed to disclose that the company was understaffing projects and deceiving major customers; (6) failed to disclose that the company was in jeopardy of losing major contracts due to quality control problems; (7) failed to disclose that a facility in Hermosillo, Mexico was not "state-of-the-art" as touted to investors; and (8) failed to disclose that C&A's internal controls were deficient. (Compl. ¶ 128) The complaint devotes significant attention also to identifying GAAP provisions

---

[3] The complaint does not name C&A as a defendant solely because of "the protection afforded to C&A by the automatic stay provisions of the United States Bankruptcy Code." (Compl. ¶ 12; see also id. ¶ 31)

that the company allegedly violated in the presentation of its financial results. (See id. ¶¶ 186-232) Based on all of these allegations, plaintiff asserts claims pursuant to Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5 (2006), against the individual defendants, and claims pursuant to Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), against the individual defendants and Heartland.

Two related cases are pending in federal courts in the Eastern District of Michigan. The first, C&A's Chapter 11 action, In re Collins & Aikman Corporation, No. 05-55927 (SWR) (the "bankruptcy action"), is ongoing in the bankruptcy court before the Honorable Steven W. Rhodes. The second, In re MacKay Shields, L.L.C., No. 05-74912 ("the MacKay Shields action"), is pending in the district court before the Honorable Arthur J. Tarnow after having been removed from state court in November 2005. (See Ex. 1 to Def. Reply Mem.) The MacKay Shields action is brought by a holder of $153 million of C&A debt securities against Heartland, Stockman, Stepp, and Koth, as well as C&A directors Timothy D. Leuliette, Daniel P. Tredwell, W. Gerald McConnell, Samuel Valenti III, John A. Galante, and Robert A. Krause. (See Ex. 5 to Miller Decl. ¶¶ 17-35) It contains similar (and, in some cases, identical) allegations regarding C&A's public disclosures and asserts several claims under Michigan

state law.  (See generally id.)  Judge Tarnow has stayed the MacKay Shields action pending the resolution of C&A's bankruptcy proceedings.  (See Ex. 1 to Def. Reply Mem.)

II.

Section 1404(a) provides that a district court may transfer any civil action to any other district where the action might have been brought "[f]or the convenience of the parties and witnesses, in the interest of justice."  28 U.S.C. § 1404(a).  The purpose of Section 1404(a) is "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense."  Van Dusen v. Barrack, 376 U.S. 612, 616 (1964) (citations and internal quotation marks omitted).

A court performs a two-part inquiry to determine whether transfer is appropriate.  First, the court must determine whether the action sought to be transferred is one that "might have been brought" in the transferee court.  28 U.S.C. 1404(a); In re Nematron Corp. Sec. Litig., 30 F. Supp. 2d 397, 400 (S.D.N.Y. 1998).  Second, the court must evaluate whether transfer is warranted using several factors relating to the convenience of transfer and the interests of justice.  See id.; see also Lewis v. C.R.I., Inc., No. 03 Civ. 651 (MBM), 2003 WL 1900859, at *2 (S.D.N.Y. Apr. 17, 2003).  These factors are: (1)

the convenience of the witnesses; (2) the convenience of the parties; (3) the location of relevant documents and the relative ease of access to sources of proof; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with governing law; (8) the weight accorded to plaintiff's choice of forum; and (9) trial efficiency and the interests of justice.  Fuji Photo Film Co. v. Lexar Media, Inc., 415 F. Supp. 2d 370, 373 (S.D.N.Y. 2006); see also Nematron, 30 F. Supp. 2d at 400; Lewis, 2003 WL 1900859, at *2.  The party moving for transfer must make a "clear and convincing" showing that transfer is appropriate.  Nematron, 30 F. Supp. 2d at 400 (citing Hubbell Inc. v. Pass & Seymour, Inc., 883 F. Supp. 955, 962 (S.D.N.Y. 1995)); see also Colour & Design v. U.S. Vinyl Mfg. Corp., No. 04 Civ. 8332 (MBM), 2005 WL 1337864, at *3 (S.D.N.Y. June 3, 2005).

       The parties do not dispute that defendants satisfy the first part of the transfer inquiry. (See Def. Mem. 10; Pl. Opp'n Mem. 3) The Exchange Act provides for venue in any district "wherein the defendant is found or is an inhabitant or transacts business. . . ."  15 U.S.C. § 78aa.  The Eastern District of Michigan meets this test in several ways; two of the individual defendants, for example, reside there.

       Transfer therefore turns on an analysis of the nine

"convenience" factors. The first of these -- the convenience of witnesses -- is generally considered the most important. Fuji Photo, 415 F. Supp. 2d at 373; Nematron, 30 F. Supp. 2d at 400; Adair v. Microfield Graphics, Inc., No. 00 Civ. 0629 (MBM), 2000 WL 1716340, at *2 (S.D.N.Y. Nov. 16, 2000). In order to show that this factor favors transfer, the moving party must identify the witnesses located in the transferee district upon whom it intends to rely and describe the content of their potential testimony. See Colour & Design, 2005 WL 1337864, at *4; see also Nematron, 30 F. Supp. 2d at 400. "Vague generalizations and failure to clearly specify the key witnesses to be called . . . are an insufficient basis upon which to grant a change of venue under § 1404(a)." Orb Factory, Ltd. v. Design Science Toys, Ltd., 6 F. Supp. 2d 203, 208-09 (S.D.N.Y. 1998).

      Defendants support their transfer motion by naming 18 specific party and non-party witnesses believed to reside within the Eastern District of Michigan, and detailing the testimony each might provide. (See generally Stockman Decl.) Among those named are C&A's former Treasurer, Controller, General Counsel, Senior Vice President for Global Procurement & Supply Chain Management, Global Plastics Division President, Global Convertible Systems Division President, and Investor Relations and Public Affairs Manager, as well as defendants Koth, C&A's former CFO, and Monsingo, C&A's former CEO. (Id. ¶¶ 5, 8-11)

These witnesses plainly possess important knowledge about C&A's accounting practices, public disclosures, supplier rebate and staffing issues, and other topics at the core of plaintiff's lawsuit. (See generally id. ¶¶ 8-11) Cf. Morgan Guar. Trust Co. v. Tisdale, No. 95 Civ. 8023 (BSJ), 1996 WL 544240, at *4-*5 (S.D.N.Y. Sept. 25, 1996) (transferring suit alleging fraudulent disclosures and accounting where witnesses most familiar with company's accounting, disclosures, and operations were located in transferee district).

Plaintiff counters that defendants intentionally omit key witnesses residing in other locations. (Pl. Opp'n Mem. 6) Among these omitted witnesses are former and current employees of Heartland, the Connecticut-based defendant that owned a controlling stake in C&A; employees of C&A's "Soft Trim" division, which defendants concede was based in North Carolina; and employees at C&A's Hermosillo, Mexico plant, a facility that plaintiff alleges was the site of numerous undisclosed problems. (Id.) Although plaintiff does not name any of these witnesses or suggest that they have any connection to the Southern District of New York -- omissions that weaken his argument against transfer -- some of them undoubtedly possess relevant information, as do defendants Stockman and Stepp, who are alleged to reside in

Connecticut and North Carolina, respectively.[4]  (See Exs. 3 & 4 to Burt Aff.)  However, the fact that not every potential witness can be found in the Eastern District of Michigan does not defeat defendants' convincing showing that a critical mass of witnesses reside there.  This factor therefore strongly favors transfer.

As for convenience of the parties, defendants Monsingo and Koth reside in the Eastern District of Michigan, defendant Stepp resides in North Carolina, and defendants Stockman and Heartland reside in Connecticut.  Lead plaintiff Egleston apparently resides in Florida (Pl. Opp'n Mem. 7), but purports to represent a class of "hundreds or thousands of members" (Compl. ¶ 35) located throughout the United States.  It is fair to assume given their posture on this motion that all defendants -- including those in Connecticut and North Carolina -- would find it more convenient to litigate this case in Michigan.  As for plaintiff, although he notes repeatedly that transfer is not appropriate where it merely shifts the inconvenience of litigating in a particular forum from one party to the other, see Dwyer v. General Motors Corp., 853 F. Supp. 690, 693 (S.D.N.Y. 1994); Colour & Design, 2005 WL 1337864, at *5, he utterly fails

---

[4]  Plaintiff, by contrast, likely has little testimony to offer as a mere purchaser and seller of C&A's securities; "[i]t is well known that trials in securities class actions focus almost entirely on the defendants' conduct." Nematron, 30 F. Supp. 2d at 402; see also Goggins v. Alliance Capital Mgmt., L.P., 279 F. Supp. 2d 228, 233 (S.D.N.Y. 2003).

9

to explain how litigating this action in Michigan shifts the inconvenience to him when he resides in Florida, not New York.[5] Also, even if plaintiff's class is certified and "this case is tried, any plaintiffs not residing in New York would be required to travel irrespective of whether the trial is held in Michigan or New York." Nematron, 30 F. Supp. 2d at 403. Given that some defendants reside in Michigan and all defendants move for transfer, convenience of the parties slightly favors transfer.

        The third factor, the location of relevant documents, favors transfer as well. According to defendants, C&A's sales, engineering, design, finance, accounting, treasury, and purchasing departments were located in C&A's Michigan headquarters, as were the key executives in all but one of the company's operating divisions. (Stockman Decl. ¶¶ 2, 3) C&A's Michigan headquarters was also where the company's consolidated financial statements, press releases, earnings statements, and SEC filings were prepared. (Id. ¶¶ 9, 13) Given these facts, although there may be other locations where relevant documents might be found, C&A's Michigan headquarters will likely contain most of them. Plaintiff argues that this factor is nonetheless neutral because technological advances have made it easy to copy

---

     [5]    Contrary to plaintiff's suggestion (see Pl. Opp'n Mem. 9 n.5), convenience of the parties' counsel is not an appropriate consideration in the transfer analysis. Fuji Photo, 415 F. Supp. 2d at 374.

and ship documents worldwide; defendants have not detailed the nature and volume of documents they will use or identified any problems with transporting these documents; and many documents may already be in counsel's New York offices due to a grand jury subpoena filed by the United States Attorney's Office in this district. (Pl.'s Opp'n Mem. 11-12)  These are all valid points that significantly weaken defendants' case for transfer based on this factor.  See Fuji Photo, 415 F. Supp. 2d at 374-75; Colour & Design, 2005 WL 1337864, at *4; Kwik Goal, Ltd. v. Youth Sports Publ'g Inc., No. 06 Civ. 395 (HB), 2006 WL 1517598, at *4 (S.D.N.Y. May 31, 2006).  Nonetheless, because it is at least marginally more convenient to conduct this litigation in the district where most of the relevant documents are located, this factor tips slightly towards transfer.  See Fuji Photo, 415 F. Supp. 2d at 374-75; In re Atherogenics Sec. Litig., No. 05 Civ. 00061, 2006 WL 851708, at *5 (S.D.N.Y. Mar. 31, 2006); Morgan Guar., 1996 WL 544240, at *6.

       The fourth factor, the locus of operative facts, more strongly favors Michigan.  Plaintiff's lawsuit predominantly concerns the public disclosures issued from C&A's Michigan headquarters and it is well-settled that "[m]isrepresentations are deemed to 'occur' in the district where the misrepresentations are issued or the truth is withheld, not where the statements at issue are received."  Adair, 2000 WL 1716340,

at *2; see also Nematron, 30 F. Supp. 2d at 404; Atherogenics, 2006 WL 851708, at *3. Moreover, defendants have offered undisputed evidence that C&A's Michigan headquarters was the principal home of C&A's corporate management team, its major departments (including treasury, finance, accounting, and purchasing), all but one of its divisions, and its corporate communications operations, as well as where the company's independent auditor, KPMG, conducted its audit. (See Stockman Decl. ¶¶ 2, 3, 11, 13) To counter these facts, plaintiff does not identify a single event that transpired in the Southern District of New York. Instead, plaintiff argues that Heartland and Stockman are not located in Michigan, that Heartland is the "site of events from which numerous claims arise," and that other important events transpired in Mexico and North Carolina. (Pl. Opp'n Mem. 9-10) These arguments do not defeat defendants' showing that Michigan is the "center of gravity" in this litigation. Plaintiff's Heartland allegations focus on Heartland's ownership position, board control, and C&A-related revenue (see id. at 9-10), issues that relate only tangentially to plaintiff's claims of fraudulent disclosures and accounting. Moreover, although important facts might be discovered at C&A's facilities in Mexico and North Carolina, many facts of at least as great importance will likely be found at C&A's Michigan headquarters, where the disclosures about the activities

12

conducted at these locations were assembled and issued. This factor therefore strongly favors Michigan.

    The availability of process to compel the attendance of witnesses also tips towards Michigan, albeit not as strongly. Under Fed. R. Civ. P. 45, a district court may compel the appearance of witnesses only that reside either in the district in which the court sits or within 100 miles of the place of trial. <u>See</u> Fed. R. Civ. P. 45(b)(2), (e). As discussed earlier in this opinion, defendants have identified 16 non-party witnesses -- including key C&A former employees such as the company's Treasurer, Controller, General Counsel, Investment and Public Affairs Manager, and Senior Vice President for Global Procurement & Supply Chain Management -- who reside in the Eastern District of Michigan and are beyond the subpoena power of this court. (<u>See</u> Stockman Decl. ¶¶ 8-11) Plaintiff, by contrast, does not name any specific witnesses whom this court could compel to appear but the Michigan court could not. Instead, he argues that this factor is neutral because defendants do not offer evidence that any specific witness might refuse to testify. (Pl. Opp'n Mem. 13) Plaintiff is correct that defendants' failure to present such evidence reduces the weight that should be accorded to this factor. <u>See, e.g.</u>, <u>Fuji Photo</u>, 415 F. Supp. 2d at 375; <u>Nematron</u>, 30 F. Supp. 2d at 405; <u>Colour & Design</u>, 2005 WL 1337864, at *4. However, that more than 15 non-

party witnesses reside outside this court's subpoena power gives rise to some risk of non-appearance and at least incrementally favors Michigan. See Ravenswood Inv. Co., LP v. Bishop Capital Corp., No. 04 Civ. 9266 (KMK), 2005 WL 236440, at *7 (S.D.N.Y. Feb. 1, 2005); In re Stillwater Mining Co. Sec. Litig., No. 02 Civ. 2806 (DC), 2003 WL 21087953, at *5 (S.D.N.Y. May 12, 2003); Adair, 2000 WL 1716340, at *3.

   The sixth and seventh factors -- the relative means of the parties and the forum's familiarity with governing law -- are both neutral.  Neither party can plausibly argue that its financial situation would meaningfully impede its ability to litigate this case in either forum.  As for familiarity with governing law, courts in the Southern District of New York and the Eastern District of Michigan are equally capable of applying the federal securities laws.  See Nematron, 30 F. Supp. 2d at 405; Atherogenics, 2006 WL 851708, at *5; Stillwater, 2003 WL 21087953, at *5.

   As for the eighth factor, although plaintiff's choice of forum is generally entitled to "considerable weight," Orb Factory, 6 F. Supp. 2d at 210, defendant notes correctly that plaintiff's choice is entitled to less deference in the present action for at least two reasons.  (See Def. Reply Mem. 2-3) First, as discussed earlier in this opinion, the operative facts in this litigation bear little, if any, connection to the

14

Southern District of New York, a circumstance that diminishes the deference accorded to plaintiff's choice.  See Fuji Photo, 415 F. Supp. 2d at 376; Nematron, 30 F. Supp. 2d at 405.  Second, plaintiff brings the present action on behalf of a purported nationwide class of investors and "in class actions less weight is given to the plaintiff's choice."  Nematron, 30 F. Supp. 2d at 405; see also Shulof v. Westinghouse Elec. Corp., 402 F. Supp. 1262, 1263 (S.D.N.Y. 1975) ("While it is axiomatic that a plaintiff's choice of forum is entitled to great consideration, the adage has little weight in stockholder class actions . . . ."); Stillwater, 2003 WL 21087953, at *5.  "The reason is that in a class action there will be numerous potential plaintiffs, each possibly able to make a showing that a particular forum is best suited for the adjudication of the class's claim."  Goggins v. Alliance Capital Mgmt., L.P., 279 F. Supp. 2d 228, 232 (S.D.N.Y. 2003) (internal quotation marks omitted).  Therefore, the eighth factor tips only slightly in plaintiff's favor.

Finally, trial efficiency and the interests of justice strongly favor transfer.  The Eastern District of Michigan is currently the site of two related cases: C&A's Chapter 11 bankruptcy proceeding and a state law fraud action brought by a major holder of C&A's debt securities containing similar allegations and naming some of the same defendants as the present

action.[6] The existence of these lawsuits "heavily" favors transfer, see APA Excelsior III L.P. v. Premiere Techs., Inc., 49 F. Supp. 2d 664, 668 (S.D.N.Y. 1999), because "[l]itigating related claims in the same tribunal allows for more efficient pretrial discovery, avoids [duplicative] litigation, prevents inconsistent results, and saves time[] and expense for both parties and witnesses." Fuji Photo, 415 F. Supp. 2d at 376; see also APA Excelsior, 49 F. Supp. 2d at 668. Applying this principle, courts regularly transfer cases such as plaintiff's where facts and witnesses overlap with cases pending in the transferee district. See Fuji Photo, 415 F. Supp. 2d at 376-77 (transferring patent suit due to "significant overlap in witnesses and documents"); Goggins, 279 F. Supp. 2d at 234 (transferring securities fraud suit to venue of action alleging same misrepresentations); APA Excelsior, 49 F. Supp. 2d at 668-71 (transferring securities fraud suit to venue of action alleging similar misrepresentations); Morgan Guar., 1996 WL 544240, at *8-*9 (transferring securities fraud suit to district where bankruptcy proceeding and securities class action lawsuit were

---

[6] Neither of these cases implicate the "first-filed" rule (see Pl. Opp'n Mem. 8 n.4), but even if they did, the court would undertake the same nine-factor "convenience" analysis to determine whether the rule should be set aside in this case, see 800-Flowers, Inc. v. Intercont'l Florist, Inc., 860 F. Supp. 128, 133 (S.D.N.Y. 1994); FindWhat.com v. Overture Servs., Inc., No. 02 Civ. 447 (MBM), 2003 WL 402649, at *5 (S.D.N.Y. Feb. 21, 2003), and arrive at the same result.

pending). Trial efficiency and the interests of justice therefore strongly favor transfer.[7]

Because six of the nine transfer factors favor the Eastern District of Michigan and only one factor slightly favors the Southern District of New York, defendants have made a "clear and convincing" showing that transfer is appropriate in this action.

\*       \*       \*

For the reasons set forth above, defendants' motion to transfer venue pursuant to 28 U.S.C. § 1404(a) is granted. The Clerk will transfer the case to the Eastern District of Michigan.

SO ORDERED:

Dated: New York, New York
       July 11, 2006

Michael B. Mukasey,
U.S. District Judge

---

[7] Plaintiff's suggestion that defendants' motion should be denied on account of their delay in bringing the instant motion (see Pl. Opp'n Mem. 14-15) is unavailing. As defendants note, this case was suspended for several weeks in 2005 due to C&A's Chapter 11 filing and the consolidated complaint, which dropped C&A as a party, was not filed until January 2006. (See Def. Reply Mem. 7-8) Moreover, the present action is still in its infancy -- no discovery has yet occurred, no class has been certified, and the parties have only recently completed briefing defendants' multiple motions to dismiss. Thus, there are still significant efficiency gains to transferring this action to a district where it can be coordinated with related actions.